IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODNEY MOTT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-09-CV-1241-BD |
| | § | |
| HOMECOMINGS FINANCIAL | § | |
| NETWORK, INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Plaintiff Rodney Mott has filed a Rule 60(b) motion for relief from the April 30, 2010 order dismissing this action with prejudice. In its dismissal order, the court found that plaintiff and his attorney violated two orders--an April 2, 2010 discovery order and an order requiring them to appear at a show cause hearing on April 30, 2010. Plaintiff now contends that his failure to comply with the orders was not the result of any misconduct on his part, but rather was due to the actions of his former attorney, Michael Brinkley. Defendant has filed a written response to the motion, and both parties were given an opportunity to present live testimony and other evidence at hearings held on June 18, 2010 and July 1, 2010. Having considered the evidence and the written submissions of the parties, the court determines that plaintiff is entitled to relief from the dismissal order.

Under Rule 60(b), a district court may grant relief from a final judgment, order, or proceeding for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct by an opposing party; (4) a void judgment; or (5) a judgment that has been reversed or otherwise vacated. *See* FED. R. CIV. P. 60(b)(1)-(5). The court may also set aside a judgment or final order for "any other reason that justifies relief." FED. R. CIV.

P. 60(b)(6). While relief under Rule 60(b) is considered an extraordinary remedy, the Fifth Circuit has held that "the rule should be construed in order to do substantial justice." *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir.), *cert. denied*, 119 S.Ct. 591 (1998). The decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court. *See Mason v. Auto Club Family Ins. Co.*, No. 09-30839, 2010 WL 1286916 at *2 (5th Cir. Mar. 30, 2010), *citing Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996).

A brief recitation of the procedural history of this case is necessary to the disposition of the pending motion. On January 8, 2008, plaintiff sued Homecomings Financial Network, Inc. in Texas state court for breach of contract, fraud, defamation, negligence, negligent misrepresentation, intentional infliction of emotional distress, wrongful foreclosure, and violations of the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act.[1] An amended petition filed on or about June 3, 2009 added a claim for improper tax reporting under 26 U.S.C. § 7434. Defendant timely removed the case to federal court on July 1, 2009. Prior to removal, defendant served plaintiff with written interrogatories and document requests. When plaintiff failed to answer this discovery or provide dates for his deposition, defendant filed a motion to compel. That motion was resolved by an agreed order requiring plaintiff to produce documents and serve interrogatory answers by April 9, 2010, and make himself available for a deposition on or before April 23, 2010. *See* Order, 4/2/10. Plaintiff failed to comply with those deadlines, but through his attorney, agreed to serve interrogatory answers and produce documents by April 19, 2010. That deadline also came and went without any discovery responses. Nor did plaintiff appear for a deposition on or before April 23, 2010, as ordered by the court.

---

[1] Plaintiff also sued the Atterstrom Consulting Group, Inc. d/b/a LMI Funding, Inc. ("LMI") for constructive fraud and fraud by non-disclosure. Those claims were dismissed by the court after plaintiff failed to amend his complaint to meet the pleading requirements of Fed. R. Civ. P. 9(b) & 12(b)(6). *See* Order, 1/27/10. At the June 18, 2010 hearing, counsel for plaintiff represented that he does not seek to reinstate the claims against LMI. (*See* Hrg. Tr., 6/18/10 at 31).

At defendant's request, the court set a show cause hearing for April 30, 2010 at 11:00 a.m. The show cause order required plaintiff and his attorney to attend the hearing in person:

> then and there to show cause why plaintiff should not be sanctioned for failing to: (1) produce or identify documents responsive to Request Nos. 17, 18, 23, 30, 59-63 & 66, or otherwise state that responsive documents do not exist; (2) answer the interrogatories propounded by defendant; and (3) appear for a deposition.

*See* Order, 4/27/10. The order further provides that "[i]f plaintiff fails to appear at the show cause hearing, the court may impose additional sanctions, including striking his complaint and dismissing this action with or without prejudice." *Id.*, *citing* FED. R. CIV. P. 16(f)(1). When plaintiff and his attorney failed to appear at the show cause hearing, the court dismissed this action with prejudice. *Mott v. Homecomings Financial Network, Inc.*, No. 3-09-CV-1241-BD, 2010 WL 1779188 (N.D. Tex. Apr. 30, 2010). On May 28, 2010, plaintiff, through his newly retained counsel, filed the instant motion for relief from the dismissal order.

Plaintiff argues that Rule 60(b) relief is appropriate because his failure to comply with the discovery order and his failure to attend the show cause hearing were the result of excusable neglect or, alternatively, were due to the misconduct of his attorney, Michael Brinkley. At a hearing held on June 18, 2010, plaintiff testified that he was unaware of the April 2, 2010 discovery order, including the requirement that he appear in Dallas for a deposition by April 23, 2010. (*See* Hrg. Tr., 6/18/10 at 49-50). Brinkley could not recall if he sent plaintiff a copy of the April 2, 2010 order, but said that "I told him about the dates that we needed to get everything done[.]" (*Id.* at 39). However, emails and text messages exchanged by Brinkley and plaintiff during the month of April tell a different story. There is absolutely no indication from these communications that Brinkley ever told plaintiff the court had ordered him to answer interrogatories or produce documents by April 9, 2010. Nor is there any evidence that plaintiff was told about an agreement to extend this deadline to April

19, 2010, or the requirement that he appear in Dallas for a deposition by April 23, 2010. Instead, on April 7, 2010, Brinkley sent plaintiff an email forwarding the interrogatories and document requests served by defendant. The email states:

> Please look over the attached (I've sent it in two formats in case you're set up for the older version of Word), and please answer the questions as best you can. Some won't need much of an answer at all, and it's always best to be as brief as possible in an answer. Please have the first page signed and notarized, and it's OK to scan or fax it back to me (toll-free fax below); I'll include it with the final version of your answers.
>
> Please also let me know of a date or dates that we could try to schedule your deposition in Dallas between now and April 23.

(Doc. #46-1 at 1). That same day, Brinkley sent plaintiff another email inquiring about certain documents. (*Id.* at 14). No mention was made of any deadline for answering the interrogatories and producing documents, or that the court had ordered plaintiff to be deposed by April 23, 2010. According to Brinkley, plaintiff returned a signed verification, but no interrogatory answers. (Hrg. Tr., 6/18/10 at 41-43). When pressed by the court on this issue, Brinkley reiterated that he "[j]ust . . . got the signature page that had the notary on it." (*Id.* at 43). The court then inquired:

> THE COURT: Okay. And you're telling me that Mr. Mott just sent you a signed verification page but didn't answer the interrogatories. Is that what you're saying?
>
> THE WITNESS: As I recall, all of the questions on the --- in that fax were blank. I mean, as far as answer --
>
> THE COURT: Okay. Well, then surely you knew that that didn't comply with the Court's order. Right?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: What efforts did you make to get Mr. Mott to answer questions?

> THE WITNESS: And I had responded to him that we needed --- we needed --- you know, I needed his help to answer these questions, that ---
>
> THE COURT: In what form did you respond?
>
> THE WITNESS: In e-mail, I believe.
>
> THE COURT: Okay.
>
> THE WITNESS: I believe it was e-mails to the text. And we had --- and he had told me, well, nothing had changed. And I -- but I had --- I asked him to help me answer the right answers. But I couldn't just generate all that.

(*Id.* at 43-44). It appears that plaintiff returned the unanswered interrogatories, along with a signed and notarized verification, to Brinkley by fax on April 15, 2010. (*See* Doc. #46-1 at 21-28).[2] However, there is no evidence that Brinkley ever pointed out this defect to plaintiff or reminded him that he needed to answer the interrogatories. Most significantly, there is absolutely no evidence that Brinkley ever told plaintiff the court had ordered him to answer interrogatories and produce documents by a date certain. Although Brinkley testified at the July 1, 2010 hearing that he spoke with plaintiff about this deadline, none of the documents submitted by the parties support that assertion. In view of these facts, the court has little difficulty concluding that Brinkley, not plaintiff, is to blame for failing to comply with the April 2, 2010 discovery order.

Nor is there any evidence that Brinkley told plaintiff the court had ordered him to appear in Dallas for a deposition by April 23, 2010. In a text message sent to plaintiff on April 16, 2010, Brinkley merely asked plaintiff for dates he could "do the deposition in Dallas (20-23 best, but u tell me dates that work)." (*See id.* at 16). Plaintiff responded by email on April 21, 2010:

---

[2] Although the documents submitted to the court by plaintiff include interrogatory answers that allegedly were sent to Brinkley, (*see* Doc. #45 at 18-22), those interrogatory answers, unlike the unanswered interrogatories included in the materials submitted by Brinkley, do not contain a fax header or any other indicia of delivery. Plaintiff reluctantly admitted at the July 1, 2010 hearing that he might not have sent interrogatory answers to Brinkley on April 15, 2010.

> i will be free to come to Dallas at the end of this month or the first week of May. Look at available dates and let me know and I'll make travel arrangements. This has been a very stressful process and I would like to conclude this as soon as possible. What is your time line in that its been three years in the making.

(*Id.* at 17). Although Brinkley testified that he believed plaintiff was not available for a deposition until May 2, 2010 due to work commitments, (*see* Hrg. Tr., 6/18/10 at 46), plaintiff said that he never discussed an April 23, 2010 deposition deadline with his attorney, that he never told Brinkley he could not be deposed before that date, and that he never asked to have the deposition postponed for work or other reasons. (*Id.* at 49). Indeed, e-mails and text messages show it was Brinkley, not plaintiff, who suggested a May 7, 2010 date for the deposition. (*See* Doc. #46-1 at 19). The failure to comply with this part of the April 2, 2010 discovery order is wholly attributable to Brinkley.

With respect to plaintiff's failure to appear at the April 30, 2010 show cause hearing, Brinkley admitted that he did not tell plaintiff about the hearing "because I was not aware of the setting. I didn't see the notice of the setting until after it occurred" (Hrg. Tr., 6/18/10 at 34). According to Brinkley, "I was on the road a lot during those days, but I was trying to look at the e-mail like a hawk on BlackBerry, in case there was some kind of a notice of any kind of proceeding. And I just flat did not see it." (*Id.* at 35). Contrary to Brinkley's testimony, the evidence suggests he did not monitor his emails "like a hawk." Court records indicate that the show cause order was emailed to Brinkley on April 27, 2010 at 1:31 p.m. Later that day, plaintiff sent a text message to Brinkley confirming his deposition on May 7, 2010. Brinkley responded to the text message at 5:12 p.m. -- more than *four hours* after receiving electronic notification of the April 30, 2010 show cause hearing. (*See* Doc. #45 at 27). Had Brinkley diligently monitored his emails, he would have discovered the setting in time to notify plaintiff.

## **CONCLUSION**

The court determines that Michael Brinkley, not plaintiff, is wholly to blame for violating the orders that led to the dismissal of this action. Under these circumstances, which the court finds to be extraordinary, relief is proper under Rule 60(b)(6). Accordingly, plaintiff's Rule 60(b) motion [Doc. #36] is granted. The April 30, 2010 order of dismissal with prejudice [Doc. #34] is set aside, and this case is hereby reinstated on the docket.

SO ORDERED.

DATED: July 1, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE